UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ERIC TAYLOR, | CASE NO. 1:16CV1375 |
| Plaintiff, | |
| v. | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| NANCY A. BERRYHILL[1], ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | MEMORANDUM OPINION AND ORDER |
| Defendant. | |

Plaintiff Eric Taylor ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income. ECF Dkt. #1. In his brief on the merits, filed on October 9, 2016, Plaintiff asks the Court to review whether: (1) the administrative law judge's ("ALJ") evaluation of the opinion of the treating psychiatrist resulted in a mental functional capacity determination that is not supported by substantial evidence; and (2) the ALJ violated Plaintiff's right to due process when finding that he constructively waived his right to attend and testify at his hearing. ECF Dkt. #15 at 12-19. On December 20, 2016, Defendant filed a response brief. ECF. Dkt. #18. Plaintiff did not file a reply brief.

For the following reasons, the Court AFFIRMS the decision of the ALJ and dismisses the instant case in its entirety with prejudice.

## I. PROCEDURAL HISTORY

Plaintiff filed his applications for DIB and SSI in March 2013. ECF Dkt. #11 ("Tr.") at 170-79.[2] In the applications, Plaintiff alleged disability beginning on June 30, 2006. *Id.* These

---

[1]On January 23, 2017, Nancy A. Berryhill became the acting Commissioner of Social Security, replacing Carolyn W. Colvin.

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed as a .PDF, rather that the page numbers assigned by the CM/ECF system. When the Transcript was filed the .PDF included an index, with the indexed pages differentiated from the numerical pages. Accordingly, the page number assigned in the .PDF mirrors the page number printed on each page of the Transcript, rather than

claims were denied initially and upon reconsideration. *Id.* at 70-103. Following these denials, Plaintiff requested a hearing before an ALJ, which was held on April 13, 2015. *Id.* at 43. Plaintiff did not appear for the hearing. *Id.* at 45. On May 1, 2015, the ALJ denied Plaintiff's applications for DIB and SSI. *Id.* at 20. Subsequently, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. *Id.* at 1. Accordingly, the decision issued by the ALJ on May 1, 2015, stands as the final decision.

On June 7, 2016, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. Plaintiff filed a brief on the merits on October 9, 2016. ECF Dkt. #15. Defendant filed a response brief on December 20, 2016. ECF Dkt. #18. Plaintiff did not file a reply brief.

## II.   SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

In the decision issued on May 1, 2015, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2006. Tr. at 25. Continuing, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. *Id.* The ALJ found that Plaintiff had the following severe impairments: bipolar disorder with psychosis; cocaine and alcohol dependence; and cocaine induced anxiety. *Id.* at 21. Next, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* When making this determination, the ALJ analyzed Plaintiff's severe impairments, medical history, and history of drug abuse, as well as the impact of these factors on his activities of daily living, social functioning, and concentration, persistence, or pace. *Id.* at 21-27. The ALJ also recognized that Plaintiff had experienced two episodes of decompensation, of extended duration. *Id.* at 27.

After consideration of the record, the ALJ found that, based on all of Plaintiff's impairments, including substance abuse disorders, that he had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following non-exertional limitations: simple, repetitive tasks requiring only occasional responses to coworkers

---

the page number assigned when the Transcript was filed in the CM/ECF system.

and supervisors, and no contact with the public; few changes in routine work setting (defined as infrequent or once per week) with only simple work-related decisions; and that he would be off task due to unscheduled breaks twenty percent of the workday and/or be absent two days per month with frequent redirection required. Tr. at 27-28. Continuing, the ALJ stated that Plaintiff was unable to perform any past relevant work, was a younger individual on the alleged disability onset date, had a limited education, and was able to communicate in English. Tr. at 28-29. The ALJ indicated that Plaintiff's acquired job skills did not transfer to other occupations within the RFC as defined above. *Id.* at 29. After making the above determinations, the ALJ found that considering Plaintiff's age, education, work experience, and RFC based on all of his impairments, including the substance abuse disorders, there were no jobs that existed in significant numbers in the national economy that Plaintiff could perform. *Id.*

Next, the ALJ determined that if Plaintiff stopped the substance use, the remaining limitations would cause more than a minimal impact on his ability to perform basic work activities, and therefore he would continue to have a severe impairment if he stopped using substances. Tr. at 30. The ALJ then found that if Plaintiff stopped the substance use, he would not have an impairment or combination of impairments that met or medically equaled any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* According to the ALJ, if Plaintiff stopped the substance use, he would have had the RFC to perform a full range of work at all exertional levels, but with the following non-exertional limitations: simple, repetitive tasks requiring only occasional responses to coworkers and supervisors, and no contact with the public; few changes in routine work setting (defined as infrequent or once per week) with only simple work-related decisions; and that he would be off task due to unscheduled breaks no more than ten percent of the workday and/or be absent one day per month. *Id.* at 31.

The ALJ then stated that if Plaintiff stopped his substance use, he would continue to be unable to perform past relevant work. Tr. at 34. Continuing, the ALJ found that the transferability of jobs skills was not material to the disability determination because the Medical-Vocational Rules supported a finding that Plaintiff was not disabled. *Id.* at 35. The ALJ then considered Plaintiff's age, education, work experience, and RFC, and determined that there were

a significant number of jobs in the national economy that he could perform if he stopped the substance use. *Id.* Next, the ALJ found that Plaintiff's substance abuse disorder was a contributing factor material to the determination of disability because he would not be disabled if he stopped the substance use. *Id.* In conclusion, the ALJ determined that because Plaintiff's substance use disorder was a contributing factor material to the determination of disability, he had not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of the decision. *Id.*

## III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in

scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra* (citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009)) (internal citations omitted).

## V. ANALYSIS

### A. Treating Physician Rule and Substantial Evidence

Plaintiff first asserts that the ALJ failed to properly evaluate the opinion of his treating psychiatrist, Megan Testa, M.D., which resulted in a mental functional capacity determination that is not supported by substantial evidence.[3] ECF Dkt. #15 at 12. Specifically, Plaintiff claims that when performing the RFC assessment, the ALJ selectively read the record and gave credit

---

[3]The undersigned recognizes that Dr. Testa issued two Medical Source Statements in which she opined as to Plaintiff's mental capacity. *See* Tr. at 497-98, 549-550. However, as Plaintiff cites to both Medical Source Statements in the argument portion of his brief, the Medical Source Statements will be referred to collectively as a single opinion since they represent Dr. Testa's holistic opinion as to Plaintiff's mental capacity. *See* ECF Dkt. #15 at 16-17.

-5-

only to the portions of Dr. Testa's opinion to which he agreed, and that this violated the treating physician rule. *Id.* Plaintiff and Defendant both recognize that the ALJ was required to determine whether Plaintiff would be considered disabled if he stopped using drugs and alcohol. ECF Dkt. #15 at 12; ECF Dkt. #18 at 8.

An ALJ must give controlling weight to the opinion of a treating source if the ALJ finds that the opinion is well-supported by medically acceptable clinical and diagnostic techniques and not inconsistent with the other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ decides to discount or reject a treating physician's opinion, he or she must provide "good reasons" for doing so. Social Security Rule ("SSR") 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how his case is determined, especially when he knows that his treating physician has deemed him disabled and he may therefore "be bewildered when told by an administrative bureaucracy that he is not, unless some reason for the agency's decision is supplied." *Wilson,* 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he or she rejected or discounted the opinions and how those reasons affected the weight afforded to the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243 (citing *Wilson*, 378 F.3d at 544).

The Sixth Circuit has noted that, "while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." *Friend v. Comm'r of Soc. Sec.*, 375 Fed.Appx. 543, 551 (6th Cir. 2010). The Sixth Circuit has held that an ALJ's failure to identify the reasons for discounting opinions, "and for explaining precisely how those reasons affected the weight" given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified

-6-

based upon the record." *Parks v. Social Sec. Admin.*, 413 Fed.Appx. 856, 864 (6th Cir. 2011) (quoting *Rogers*, 486 F.3d at 243 ). However, an ALJ need not discuss every piece of evidence in the administrative record so long as he or she considers all of a claimant's medically determinable impairments and the opinion is supported by substantial evidence. *See* 20 C.F.R. § 404.1545(a)(2); *see also Thacker v. Comm'r of Soc. Sec.*, 99 Fed.Appx. 661, 665 (6th Cir. 2004). Substantial evidence can be "less than a preponderance," but must be adequate for a reasonable mind to accept the ALJ's conclusion. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (citation omitted).

After discussing the requirements imposed by the treating physician rule, Plaintiff provides a summary of his treatment history with Dr. Testa. ECF Dkt. #15 at 14-15. Plaintiff states that he underwent an evaluation performed by Dr. Testa in March 2014 that showed: tangential, fast, and pressured speech; grandiose thoughts; expansive affect; and poor, distractible concentration. *Id.* at 14. Next, Plaintiff indicates that Dr. Testa diagnosed him with bipolar I disorder with manic features and cocaine use disorder in early remission. *Id.* Plaintiff also states that Dr. Testa found that he had "rare" ability to: follow work rules; use judgment; maintain attention and concentration; respond to changes in routine settings; maintain regular attendance; be punctual; deal with the public, coworkers, and supervisors; function independently; work with others; deal with stress; complete a workday and work week; understand, remember, and complete job instructions; socialize and behave in an emotionally stable manner; relate predictably; and manage funds or schedules. *Id.* Continuing, Plaintiff states that Dr. Testa concluded that he could not maintain concentration at a pace that would allow him to perform gainful work. *Id.*

Plaintiff then indicates that on April 7, 2014, Dr. Testa reported that he "was grandiose, hypomanic, and medically compliant," and then diagnosed him with bipolar disorder with the notation that he was "clean from cocaine." ECF Dkt. #15 at 14. According to Plaintiff, a similar diagnosis was made later that month which indicated he had not used cocaine since his last relapse. *Id.* Plaintiff then states that in June 2014, Dr. Testa noted that Plaintiff was doing well and had not had a recent cocaine relapse. *Id.* at 15. Continuing, Plaintiff cites to Dr. Testa's

-7-

August 2014 report stating that he was bipolar, on medication, and possibly hypomanic, and noting that he had occasional "slips with cocaine." *Id.* Plaintiff states that in November 2014, Dr. Testa noted that he: switched topics rapidly with minimal association between thoughts; was irritable; had marginal insight and judgment; and displayed bipolar disorder with ongoing hypomanic symptoms and cocaine use disorder with sketchy abstinence. *Id.* Additionally, Plaintiff notes similar diagnoses made by Dr. Testa in December 2014, and states that on December 22, 2014, Dr. Testa reported that Plaintiff's medication compliance was improving. *Id.*

Next, Plaintiff indicates that Dr. Testa provided an updated mental functional capacity assessment on February 23, 2015. ECF Dkt. #15 at 15. Plaintiff states that Dr. Testa found that he had "rare" ability to: maintain attention and concentration; respond appropriately to changes in routine settings; deal with the public, coworkers, and supervisors; work with others; deal with stress; complete a workday and work week; understand, remember, and carry out complex job instructions; socialize and behave in an emotionally stable manner; relate predictably; and manage funds or schedules. *Id.*

Following this discussion regarding Dr. Testa's treatment and opinion, Plaintiff asserts that the ALJ "relied on selective portions of the opinions and presumed differences in Plaintiff's functioning with and without substance use" when making the RFC finding. ECF Dkt. #15 at 16. Plaintiff claims that the ALJ's selective reading and distorted interpretation of the medical evidence does not amount to "good reasons" for rejecting Dr. Testa's opinion. *Id.* Specifically, Plaintiff avers that Dr. Testa was aware of his substance abuse, yet still issued her opinion based on his bipolar disorder with hypomania, distractiblity, delusions, and grandiosity persisting with medications. *Id.* at 16. Plaintiff also notes that Dr. Testa opined that he could not maintain concentration at a pace that would allow him to perform gainful work. Based on the above arguments, Plaintiff asserts that the ALJ failed to properly evaluate Dr. Testa's opinion, and thus the decision is not supported by substantial evidence. *Id.*

Defendant contends that the ALJ properly determined that cocaine and alcohol dependence materially contributed to Plaintiff's disability, and that if Plaintiff refrained from

-8-

substance abuse, he would be able to work. ECF Dkt. #18 at 8. Defendant avers that in so finding, the ALJ relied, in part, on the consultative evaluation performed by the examining psychologist, Herschel Pickholtz, Ed.D., who opined that Plaintiff's mental impairment "certainly would improve with sobriety and possibly some future psychiatric treatment." *Id.*

Continuing, Defendant asserts that the ALJ did not rely solely on Dr. Pickholtz's opinion, stating that the ALJ also considered evidence of Plaintiff's improvements when he abstained from drug use and complied with prescribed treatment.[4] ECF Dkt. #18 at 8. Defendant then indicates that although Plaintiff was psychiatrically hospitalized on multiple occasions after reporting suicidal and homicidal ideation, each incident arose at a time when he was using cocaine. *Id.* (citing Tr. at 338-39, 374, 378, 412-13, 451-52, 482-83, 751). Additionally, Defendant states that Dr. Testa's treatment notes indicated that Plaintiff's mental health symptoms improved when he took his prescribed medication and reduced the frequency of his cocaine use. *Id.* at 8-9. Defendant notes that Plaintiff reported in 2014 after being prescribed Depakote that he: was doing well; felt his energy was better; was not as angry; was able to avoid fights; and denied suicidal or homicidal ideation. *Id.* at 9 (citing Tr. at 32, 499, 519-21, 523, 545).

Next, Defendant asserts that to the extent Dr. Testa assessed limitations more restrictive than Plaintiff's RFC, the ALJ properly determined that Dr. Testa's opinion "was out of proportion with her own treatment notes, which reflected improved mood and concentration, and decreased irritability with adherence to treatment and abstinence from drug use." ECF Dkt. #18 at 9. Defendant avers that the ALJ properly discounted the weight assigned to Dr. Testa's opinion as it lacked clinical support. *Id.* (citing 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3)). Finally, Defendant claims that Plaintiff generally asserts that his mental impairment(s) remained disabling even absent drug use, but does not cite any medical evidence to support this contention. *Id.* at 9-10.

---

[4]Defendant cites *Blaylock v. Comm'r of Soc. Sec.*, 947 F.Supp.2d 826, 840 (N.D. Ohio May 24, 2013), in support of the proposition that periods of abstinence are relevant to determining a claimant's level of functioning in the absence of substance abuse. ECF Dkt. #18 at 8.

Plaintiff has failed to show that the ALJ improperly evaluated Dr. Testa's opinion. The treating physician rule requires that an ALJ give controlling weight to the opinion of a treating source if the ALJ finds that the opinion is well-supported by medically acceptable clinical and diagnostic techniques and not inconsistent with the other substantial evidence in the record. *Wilson*, 378 F.3d at 544. If an ALJ decides to discount or reject a treating physician's opinion, he or she must provide "good reasons" for doing so. SSR 96-2p.

The ALJ provided "good reasons" for discounting Dr. Testa's opinion. In the decision, the ALJ found that the medical record confirmed that sobriety and medication compliance improved Plaintiff's functional capacity. Tr. at 32. Specifically, the ALJ stated that Dr. Testa's treatment records showed that medication led to an improvement in Plaintiff's mood and affect, increased concentration and focus, and reduced irritability towards others. *Id.* Continuing, the ALJ indicated that Plaintiff had not reported suicidal or homicidal ideation unrelated to substance abuse and that Dr. Testa's records also noted that any increases in Plaintiff's symptoms were directly related to relapses of substance abuse or a failure to take prescribed medications. *Id.* The ALJ also cited to portions of Dr. Testa's treatment notes that were found to demonstrate that Plaintiff's mental capacity improved significantly with sobriety and that he could work if he remained sober and was compliant with his treatment regimen. *Id.* at 32-33. For example, the ALJ indicated that Dr. Testa's treatment notes reported that, with sobriety and adherence to his medication regimen, Plaintiff improved in multiple areas, including the ability to: understand, remember, and carry out simple job instructions; maintain appearance; function independently without redirection; maintain regular attendance; and be punctual within customary tolerances. *Id.* at 32. Further, the ALJ noted that Dr. Testa opined that Plaintiff could frequently understand, remember, and carry out simple instructions, and occasionally perform detailed instructions, follow job rules, maintain regular attendance, and work independently without redirection. *Id.* at 32-33.

The portions of Dr. Testa's treatment notes relied upon by the ALJ demonstrate significant improvements in Plaintiff's mental state when he remained sober and was compliant with his treatment regimen. Moreover, Plaintiff fails to cite to medical evidence supporting his

-10-

contention that his mental impairment(s) remained disabling absent his drug use. Plaintiff asserts that "there is no significant evidence to establish that Dr. Testa's opinions, which support a finding of disability, do not deserve the same great weight absent polysubstance use, therefore the ALJ's decision is not supported by substantial evidence." ECF Dkt. #15 at 17. In fact, there is substantial evidence demonstrating that Plaintiff's mental status improved when he remained sober and adhered to his treatment regime, and a lack of evidence demonstrating that his mental impairment(s) remained disabling absent his drug use. Further, in cases involving drug addiction and alcoholism, Plaintiff continues to carry the burden of proving disability throughout the analysis of whether drug or alcohol abuse is a contributing factor material to his disability. 42 U.S.C. § 423(d)(2)(C); SSR 13-2p. Plaintiff has failed to present evidence establishing that he would be considered disabled absent his polysubstance use. Accordingly, the ALJ provided "good reasons" for discounting Dr. Testa's opinion, and, therefore, the ALJ's decision is supported by substantial evidence.

### B. Due Process

Plaintiff next asserts that the ALJ violated his right to due process when it was found that he had constructively waived his right to attend and testify at his hearing without addressing whether he was an essential witness. ECF Dkt. #15 at 17-19. According to Plaintiff, the ALJ's failure to determine whether Plaintiff was an essential witness, investigate why Plaintiff was absent, or offer to postpone the hearing violated his right to due process. *Id.* at 18. Further, Plaintiff asserts that the ALJ should have considered whether Plaintiff's condition directly impacted his ability to attend the hearing, and that his presence was required at the hearing so that the ALJ could properly assess his credibility. *Id.* at 18-19.

Hearings, Appeals, and Litigation Law Manual ("HALLEX") I-2-4-25(D) dictates the Social Security Administration's policy when an appointed representative appears at a hearing without the claimant. HALLEX I-2-4-25(D)(2) states, in relevant part:

> 2. Representative Continues to Represent the Claimant During the Hearing
> If an appointed representative appears at the scheduled hearing without the claimant and continues to represent the claimant during the hearing, dismissal is never appropriate. However, the ALJ may determine that the claimant has constructively waived the right to appear at the hearing if:

-11-

- The representative is unable to locate the claimant;

- The notice of hearing was mailed to the claimant's last know address; and

- The contact procedures required by 20 C.F.R. §§ 404.938 and 416.1438, as described in HALLEX I-2-3-20, have been followed.

   a. Constructive Waiver of Right to Appear
   If the ALJ finds that the claimant has constructively waived the right to appear at the hearing, the ALJ need not proceed with the hearing and may choose to issue a decision on the record. However, if medical expert or vocational expert testimony is needed to resolve the case, the ALJ may choose to proceed with the hearing, accepting the testimony of the witness(es) and allowing the appointed representative to question the witness(es) and make arguments on the claimant's behalf.

1993 WL 643012.

In the instant case, Plaintiff's attorney appeared at the hearing without him, and continued to represent him during the hearing. This continued representation is evident from the following exchange between the ALJ and Plaintiff's attorney at the outset of the hearing:

ALJ: The claimant has not arrived. He indicated to counsel that he would be here. He's not here. He didn't indicate or call the office to say he's not coming. As far as I know he's received notice, so I will take the position that he's constructively waived appearance. I'm going to go ahead with the [vocational expert] testimony.

ATTN: Okay, your honor.

ALJ: Present here is the hearing reporter[...] by telephone, the vocational expert[...], and counsel for [Plaintiff].

ATTN: Yes, sir.

ALJ: All right, and I will admit into evidence Exhibits – do you have any objections or additions to the exhibits?

ATTN: No, your honor.

Tr. at 45. In addition, Plaintiff's counsel presented an opening statement and questioned the vocational expert present for the hearing, albeit briefly. *Id.* at 46-47, 51-52.

Accordingly, it was appropriate for the ALJ to determine that Plaintiff had constructively waived his right to appear at the hearing if: (1) the representative was unable to locate Plaintiff; (2) notice of the hearing was mailed to Plaintiff's last know address; and (3) the contact procedures required by 20 C.F.R. §§ 404.938 and 416.1438, as described in HALLEX I-2-3-20,

-12-

were followed. HALLEX I-2-4-25(D)(2). It is evident from the above exchange that Plaintiff's counsel was unable to locate his client for the hearing as Plaintiff was not present despite his indication to his counsel that he would appear for the hearing. *Id.* As for notice of the hearing, Defendant issued notices to Plaintiff of the date, time, and location of the hearing on January 26, 2015, and March 30, 2015. Tr. at 143, 157. Plaintiff acknowledged receipt of the hearing notices on January 30, 2015, and April 3, 2015, and represented that he would be present at the hearing when responding to each notice. Tr. at 167-68. Further, based on the record, its appears that the contact procedures required by 20 C.F.R. §§ 404.938 and 416.1438, as described in HALLEX I-2-3-20 were followed.[5] Accordingly, the ALJ found that claimant constructively waived his right to appear at the hearing. Moreover, the ALJ stated at the hearing that he was taking the position that Plaintiff constructively waived his right to appear. Tr. at 45. Plaintiff's counsel did not object or request a continuation of the hearing. *Id.*

Insofar as Plaintiff submits that the ALJ should have considered whether his condition directly impacted his ability to attend the hearing, this issue was not raised until after the ALJ had issued the decision. ECF Dkt. #15 at 19; Tr. at 13, 20. The ALJ followed the procedure set forth in HALLEX I-2-4-25(D)(2) when finding that Plaintiff constructively waived his right to appear, and Plaintiff, who was represented by counsel, did not take issue with the ALJ's finding of a constructive waiver until after an unfavorable decision had been issued. Considering these circumstances, Plaintiff has failed to establish that this case should be remanded to afford him an opportunity to appear and testify after the ALJ properly found that he had constructively waived his right to appear.

Plaintiff also briefly asserts that his testimony is critical to determining his credibility and ability to function, and states that "[t]he ALJ is not permitted to make credibility determinations based solely upon 'intangible notion[s] about an individual's credibility.'" ECF Dkt. #15 at 19 (citing *Rogers*, 486 F.3d at 247). As stated above, the ALJ properly determined that Plaintiff had constructively waived his right to appear at his hearing. Accordingly, Plaintiff's assertion that

---

[5]Plaintiff does not assert that any of the contact procedures required by 20 C.F.R. §§ 404.938 or 416.1438, as described in HALLEX I-2-3-20, were not followed.

-13-

the ALJ erred by making credibility determinations without Plaintiff's testimony is without merit. Moreover, when addressing Plaintiff's credibility, the ALJ discussed, at great length, Plaintiff's reported symptoms and explained how his reports were inconsistent with the medical evidence and his own statements contained in the record. *See* Tr. at 21-34. As such, the ALJ's credibility determination was not based solely on intangible notions about Plaintiff's credibility. For these reasons, the ALJ did not violate Plaintiff's right to due process when finding that he constructively waived his right to appear at the hearing.

## **VI.** **CONCLUSION**

For the foregoing reasons, the Court AFFIRMS the decision of the ALJ and dismisses the instant case in its entirety with prejudice.

Date: August 8, 2017 */s/George J. Limbert*
GEORGE J. LIMBERT
UNITED STATES MAGISTRATE JUDGE